UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| KAYLEE F.,[1] | Case No. 24-cv-2424 (SGE) |
| Plaintiff, | |
| v. | ORDER |
| FRANK BISIGNANO, *Commissioner of Social Security,* | |
| Defendant. | |

The matter is before the undersigned United States Magistrate Judge for disposition by the consent of both parties, pursuant to 28 U.S.C. § 636(c) and Local Rules 7.2(c)(2)(A). Plaintiff Kaylee F. ("Plaintiff") seeks judicial review of a final decision of the Commissioner ("Defendant") denying her application for disability insurance benefits ("DIB"). This Court has jurisdiction over the claims under 42 U.S.C. § 405(g).

Pursuant to the Federal Supplemental Rules of Civil Procedure which govern an action seeking judicial review of a decision of the Commissioner of Social Security, the present action should be "presented for decision by the parties' briefs." Fed. R. Civ. P. Supp. SS Rule 5. The matter is now before the Court on Plaintiff's Brief (Dkt. 6) and

---

[1] The District of Minnesota has adopted a policy of using only the first name and last initial of nongovernmental parties in Social Security cases.

Defendant's Brief (Dkt. 9), along with the Social Security Administration Administrative Record (hereinafter "Tr.")[2] (Dkt. 4).

Plaintiff states she is living with Post-Traumatic Stress Disorder ("PTSD"), depression with anxiety and panic attacks, bone spurs on her right foot, swelling ankles, memory loss, and fear of men. (Pl. Br. 1, Dkt. 6.)[3] Plaintiff challenges the Commissioner's final decision on the asserted grounds that the Administrative Law Judge committed "reversible error by recognizing jobs from the [Vocational Expert ("VE")] that did not meet the criteria of the Residual Functional Capacity (RFC) and hypothetical questions." (*Id.* at 2.) The Commissioner asks the Court to affirm the final decision in all respects.

As set forth fully below, the Court finds that the ALJ's decision is supported by substantial evidence on the record as a whole and that the ALJ committed no legal error. Accordingly, the Court denies Plaintiff's Motion for Summary Judgment, grants the Commissioner's Motion for Summary Judgment, and affirms the Commissioner's final decision.

---

[2] Throughout this Order, the Court refers to the Administrative Record, [Dkt. 4], by the abbreviation "Tr." Where the Court cites to the Administrative Record, it refers to the page numbers found in the bottom-right corner of each page of the record.

[3] Citations to the parties' briefing use the pagination generated by CM/ECF and placed on the top of each page.

I.     **Background**

   A. **Process for Applying for Disability Benefits**

People with disabilities can qualify for financial support from the Social Security Administration ("SSA") through one or both of its assistance programs: the Disability Insurance ("DIB") Program under Title II of the Social Security Act and the Supplemental Security Income ("SSI") Program under Title XVI of the Act. *Smith v. Berryhill*, 587 U.S. 471, 475 (2019) (citing *Bowen v. Galbreath*, 485 U.S. 74, 75 (1988)). Relevant here, DIB is a program that provides support to those who worked and had sufficient social security taxes withheld from their pay over their working life to qualify for coverage if they become disabled. *Id.*; 42 U.S.C. § 423(a) (guaranteeing benefits for insured disabled people).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). It further defines a physical or mental impairment as one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To receive disability benefits, claimants submit applications to the SSA, which grants or denies them according to its own regulations. 20 C.F.R. § 404.900 (outlining DIB administrative process under Title II). SSA officials grant or deny an application at what is called the "initial determination." 20 C.F.R. § 404.900(a)(1). If a claimant does not succeed at their initial determination and wants the decision reviewed, they must file a timely

request for reconsideration. 20 C.F.R. §§ 404.900(a)(2), 404.909. If the claimant's application is denied at the reconsideration level and the claimant wants the reconsideration reviewed, they must timely request a hearing before an administrative law judge ("ALJ"). 20 C.F.R. §§ 404.900(a)(3), 404.933.

The administrative law judge determines whether a person is disabled using the five-step analysis promulgated by the Commissioner and described in the regulations. *See* 20 C.F.R. § 404.1520. For the first four steps, the claimant bears the burden of proof. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). Steps one through four ask: (1) whether the claimant has engaged in substantial gainful activity since the alleged onset of disability, (2) whether the claimant is suffering from a severe medical impairment, (3) whether claimant's impairment meets or equals the severity of an impairment listed in the Listing of Impairments (20 C.F.R. Part 404, Subpart P, App. 1), and (4) whether the claimant has the Residual Functional Capacity ("RFC") to perform their past relevant work (PRW). 20 C.F.R. § 404.1520. If the claimant successfully meets their burden of proof for steps one through four, the Commissioner bears the burden at step five to establish that the claimant can perform other work that exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1505(a), 404.1512(f), 404.1520(a)(4)(v).

If the claimant is not satisfied with the ALJ's decision, they can request that a panel of members of the Social Security Appeals Council[4] review the decision. 20 C.F.R.

---

[4] The Appeals Council is a group of judges and officers that reviews ALJ decisions. *Smith*, 139 S. Ct. at 1772.

§§ 404.900(a)(4), 404.968. If the Appeals Council grants review of the ALJ's decision, the Appeals Council's decision on the issue becomes the final decision of the Commissioner. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000). If the Appeals Council denies review, as happened here, the ALJ's decision is the final decision of the Commissioner. *Id.* After obtaining a final decision, claimants can seek review of the Commissioner's decision in federal district court in the judicial district in which they live. *Id.*; 42 U.S.C. § 405(g).

### B. Plaintiff's Application for Benefits

Plaintiff filed for DIB on January 5, 2022, alleging she became disabled on October 4, 2019, and her "date last insured" was March 30, 2020.[5] (*See* Tr. 22.)[6] Plaintiff's alleged impairments included "PTSD, depression with anxiety and panic attacks, bone spurs on right foot, ankle problems, memory loss, and fear of men." (*See* Tr. 105.) Plaintiff's claims were first denied on March 31, 2022 and then again upon reconsideration on June 23, 2022. (*Id.* at 22.) The ALJ held a hearing on December 9, 2022, wherein both the Plaintiff and the Vocational Expert, Pauline Pegram-Wargel, testified. (*Id.*)

On January 5, 2023, the ALJ issued a decision finding that Plaintiff was not disabled under the Social Security Act between the alleged onset of disability date through the date last insured. (Tr. 23.) The ALJ determined that Plaintiff had a long list of severe

---

[5] To succeed on her DIB claim, Plaintiff must show that she became disabled on or before her "date last insured" and that her disability persisted for 12 consecutive months. *See Pyland v. Apfel*, 149 F.3d 873, 876 (8th Cir. 1998); 20 C.F.R. § 404.1509 (describing the duration requirement).

[6] The Social Security administrative record is consecutively paginated on the lower right corner of each page, and the Court cites to those page numbers.

5

impairments.[7] (Tr. 25.) But the ALJ also determined that Plaintiff did not have an impairment or combination of impairments as severe as, or more severe than, an impairment listed in the Listing of Impairments through the date last insured. (*Id*.) The ALJ also found that, through the date last insured, she retained the RFC to perform light work. (Tr. 33.)

The ALJ found that Plaintiff's RFC meant she could generally perform light work as defined in 20 CFR 404.1567(b), but Plaintiff could not crawl or climb ladders, ropes, or scaffolds; could not work in extremes of heat, in humid environments, at unprotected heights, or around moving mechanical parts; could not work at a production rate pace; and could occasionally interact with supervisors and coworkers, but not the public. (Tr. 33.) The ALJ concluded that Plaintiff could occasionally work around concentrated exposure to atmospheric conditions such as fumes, noxious odors, dusts, or gases; could work with large objects; could perform simple tasks and make simple work-related decisions; and could adapt to occasional changes in her work routine or job tasks. (*Id*.)

---

[7] These impairments include: including osteoarthritis and tendon tearing of the right shoulder status post rotator cuff repair, glaucomatous optic atrophy of left eye, corneal thickness of right eye, lumbar congenital pseudoarthrosis, lumbar radiculopathy, degenerative disc disease of the thoracic and lumbar spine, hypertension, history of nephrolithiasis status post left-sided nephrectomy, acetabular retroversion of right hip, femoroacetabular impingement, and trochanteric bursitis, congenital pes planus, plantar fasciitis, pronation deformity, and calcaneal spurring of the bilateral feet, insomnia, asthma, obesity, major depressive disorder, panic disorder without agoraphobia, generalized anxiety disorder, post-traumatic stress disorder, borderline intellectual functioning and executive function deficit, borderline personality disorder, and attention deficit hyperactivity disorder.

In the final step, the ALJ determined that, given the Plaintiff's age, education, work experience, and RFC through the date last insured, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 39.) Because the ALJ found that Plaintiff had an RFC that was more limited than a simple limitation to unskilled light work, he sought the opinion of a VE on whether jobs existed in significant numbers in the national economy that could be performed by a person with Plaintiff's RFC. (Tr. 40.) In response, the VE provided three jobs that would meet those limitations: Marking Clerk, Routing Clerk, and Photo-Copy Machine Operator. (*Id*.) The ALJ also asked the VE to supply jobs that would meet the same limitations, with the alteration that the hypothetical person would be limited to sedentary work. In response, the VE provided three jobs that would meet those limitations: Document Preparation Clerk, Sorter, and Assembler.[8] (*Id*.) Based on these responses, the ALJ concluded, "through the date last insured, considering the claimant's age, education, work experience, and [RFC], the claimant was capable of . . . work that existed in significant numbers in the national economy," and the ALJ found Plaintiff "not disabled." (*Id*.)

## II. Plaintiff's Argument

Plaintiff's chief argument is that the ALJ recognized jobs provided by the VE that did not meet the limitations set out in the RFC. Specifically, Plaintiff identifies each of the

---

[8] The Commissioner argues that the Court should not consider this second set of jobs because the ALJ ultimately determined that Plaintiff was capable of the earlier-discussed light work level, making this suggestion surplusage. Determination of this question is not necessary to reach the Court's conclusion, so for the sake of thoroughness, the Court will address these proffered jobs.

7

following jobs as incongruent with the RFC: Marking Clerk (as defined in the U.S. Department of Labor's Dictionary of Occupational Titles ("DOT") No. 209.587-034), Routing Clerk (DOT No. 222.687-022), Photo-Copy Machine Operator (DOT No. 207.685-014), Document Preparation Clerk (DOT No. 249.587-018), Sorter (DOT No. 521.687-086), and Assembler (DOT No. 669.687-014).

Plaintiff challenges the first three proffered jobs, Marking Clerk, Routing Clerk, and Photo-Copy Machine Operator on the grounds that each has a Reasoning Level of 2, which means that they require a worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and d]eal with problems involving a few concrete variables in or from standardized situations." Dictionary of Occupational Titles, Appendix C. She also challenges the Document Preparation Clerk job on the grounds that it has a Reasoning Level of 3, which means it requires a worker to "[a]pply commonsense understanding to carry out instructions furnished in written, oral or diagrammatic form [and d]eal with problems involving several concrete variables in or from standardized situations." *Id*. She argues that these requirements directly contradict the assigned RFC, because the ALJ concluded that Plaintiff had an RFC that allowed her only to "perform simple tasks as well as make simple work-related decisions," "adapt to occasional changes in her work routine or job tasks," and "occasionally interact with supervisors and coworkers, but not the public." (Tr. 33.) The Plaintiff argues that the requirements of each of the proffered jobs exceed what Plaintiff can do, given her disabilities and RFC.

Plaintiff also challenges the Marking Clerk, Routing Clerk, and Sorter[9] jobs because those jobs require "near frequent acuity," and Plaintiff has a "serious medical impairment of glaucomatous optic atrophy of the left eye." (Pl. Br. 5–6.) Plaintiff argues that the ALJ found the glaucomatous optic atrophy of Plaintiff's left eye was "severe," but then failed to mention it in his hypothetical to the VE. She argues that finding these jobs could be performed by Plaintiff is incompatible with the ALJ's RFC finding. (Pl. Br. 6–7.)

### III.     Legal Standards

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence on the record as a whole supports the decision, 42 U.S.C. § 405(g), or whether the ALJ's decision resulted from an error of law. *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id*. (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or if the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two

---

[9] Plaintiff's brief includes a Dowel Inspector job in this list, but the term "Dowel Inspector" appears nowhere in the ALJ's decision, or in the record, more broadly. Accordingly, the Court disregards Plaintiff's objections regarding a "Dowel Inspector" job.

inconsistent positions from the evidence and one of those positions is that of the Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

A claimant has the burden to prove disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability, the claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

## IV.   Discussion

### A. Cognitive and Reasoning Limitations

Plaintiff argues that some jobs listed by the VE in response to the hypothetical posed by the ALJ conflicted with the RFC assigned by the ALJ because they required a level of cognitive and reasoning ability for which the RFC did not provide. She states that Marking Clerk, Routing Clerk, and Photo-Copy Machine Operator require a Reasoning Level of 2, assigned to jobs that require workers to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and d]eal with problems involving a few concrete variables in or from standardized situations." Dictionary of Occupational Titles, (4th Ed., Rev 1991), Appendix C. Further, she states that Document Preparation Clerk requires a Reasoning Level of 3, assigned to jobs that require workers to "[a]pply commonsense understanding to carry out instructions furnished in written, oral or diagrammatic form [and d]eal with problems involving several concrete variables in or

from standardized situations." Dictionary of Occupational Titles, (5th Ed., Rev. 1991). Plaintiff asserts that these definitions conflict with the RFC, which says, in relevant part, that she was able to "perform simple tasks as well as make simple work-related decisions," "adapt to occasional changes in her work routine or job tasks," and "occasionally interact with supervisors and coworkers, but not the public." (Tr. 33.) Plaintiff simplifies this RFC as limiting her to "simple tasks and simple instructions, with occasional interactions with coworkers and supervisors and no interaction with the public." (Pl. Br. 5, Dkt. 5.)

The Commissioner notes that job definitions in the DOT are generic job descriptions that list a maximum requirement for a specific job, (Def's. Br. 12, Dkt. 9 (citing *Moore v. Astrue*, 623 F.3d, 599, 604 (8th Cir. 2010)), and that this lack of specificity is why ALJs seek input from VEs in determining the capabilities of a specific claimant. (*Id*.) This type of determination is one of the key roles of judges of all types: applying *generalized* rules to the *specific* scenarios presented by the parties in front of them. The role of this Court is not to nitpick that very case-specific determination made by the ALJ, but to determine whether the ALJ's decision is supported by substantial evidence on the record as a whole under 42 U.S.C. § 405(g), or if it resulted from an error of law. *Nash*, 907 F.3d at 1089. On both questions, the Court finds the ALJ's decision to be sound.

While technically possible, it is practically unrealistic for an ALJ to craft an RFC that matches a DOT job definition verbatim. As the Commissioner points out, the determination of the RFC in step four is an entirely separate process from the determination of what jobs a person may be able to perform in step five. *Lacroix v. Barnhart*, 465 F.3d 881, 888 n.3 (8th Cir. 2006). In fact, the burden of proof is laid upon different parties in

11

those two steps, *see* 20 C.F.R. §§ 404.1505(a), 404.1512(f), 404.1520(a)(4)(v), and because the RFC is determined first, the ALJ does not consider potential jobs that may be discussed in step five in determining the RFC. This necessary incongruence between the text of the RFC, as established by the ALJ, and the job description in the DOT means that the ALJ must have some level of discretion to apply the RFC to the DOT descriptions. That discretion is exercised within the confines of the law and informed by the vocational *expert*, someone who has dedicated their professional career to assessing a person's physical and psychological limitations and determining their ability to work in specific jobs.

This Court's role is not to determine whether it would make a different decision in the ALJ's position or if substantial evidence would support another decision, but to determine whether substantial evidence exists to support the ALJ's decision. Here, the answer is in the affirmative. The VE stated in her testimony that Plaintiff was capable of performing the jobs she listed—Marking Clerk, Routing Clerk, Photo-Copy Machine Operator, and Document Preparation Clerk—and that were largely consistent with the DOT, but that there were areas where it did conflict. (Tr. 82.) The VE continued to explain that her professional experience and education (including a master's degree in Rehabilitation Counseling) supported her testimony where that testimony was not supported by the DOT definitions. (Tr. 83.) Under these circumstances and receiving these reassurances, the ALJ was entitled to rely on the VE's testimony, and the Court must accept the VE's testimony as substantial evidence supporting the ALJ's decision. *Welsh v. Colvin*, 765 F.3d 926, 930 (8th Cir. 2014). The VE identified the jobs challenged by the Plaintiff as matching the Plaintiff's RFC and did so based on her training and experience. (R. 82–

83.) The VE also stated that the specifically listed jobs were examples of jobs that matched the Plaintiff's RFC and that other jobs matching that RFC existed. (Tr. 79.) Accordingly, the Court finds that there was substantial evidence for the ALJ to determine that the claimant could perform other work that exists in significant numbers in the national economy and that Plaintiff was not disabled for the period for which she claimed benefits.

### B. Visual Acuity and Plaintiff's Glaucomatous Optic Atrophy

Plaintiff also argues that her RFC does not allow for her to perform work as a Marking Clerk, Routing Clerk, or Sorter, as concluded by the ALJ upon the VE opinion, because those jobs require "near frequent acuity," and Plaintiff has a "serious medical impairment of glaucomatous optic atrophy of the left eye," which "appear to be incongruous" with one another. (Pl. Br. 5–6.) As far as the Court can see, Plaintiff raises her vision issues for the first time in her briefing to this Court. The ALJ listed "glaucomatous optic atrophy of left eye" as a severe impairment but added that Plaintiff's "medical records do not document these severe findings," meaning that the impairment did not meet the requirements of the relevant impairment listings in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 28.) The ALJ noted that Plaintiff had a "history of glaucomatous optic atrophy of left eye and corneal thickness of right eye," (Tr. 34) but that Plaintiff submitted no records that mentioned any connection between this diagnosis and the vision-loss requirements in the Regulations that measure the extent of a person's impairment. (Tr. 28.) A doctor recommended that Plaintiff be tested for glaucoma in 2017, and that testing resulted in "[n]o diagnosis of GLC at this time." (Tr. 352.) There are no further records of

13

testing or treatment for vison-related impairment. Accordingly, the ALJ's determination of Plaintiff's RFC assigned no vision-related limitations on Plaintiff's ability to work.

The ALJ could not make a determination on the impact of Plaintiff's glaucomatous optic atrophy on the Plaintiff's ability to work because the ALJ had no medical records to support any potential connection between those two conclusions. These two steps in the disability determination analysis are separate and independent, and courts regularly find that a person can have a severe impairment that does not impact the person's ability to work. *Lacroix*, 465 F.3d at 888 n.3. As courts in this District have held, "[t]he issue ultimately comes down [to] whether the decision by the ALJ not to include [] limitations in the RFC is supported by substantial evidence in the record as a whole during the limited period for which Plaintiff was insured." *Vicky R. v. Saul*, Case no. 19-cv-2530 (ADM/ECW), 2021 WL 536297, at *12 (D. Minn. Jan. 28, 2021).

Here, the Court must decide whether the ALJ's decision *not* to include limitations related to Plaintiff's vision in the RFC is supported by substantial evidence in the record. *See Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). The ALJ's decision is supported by substantial evidence, and nothing in the record suggests that Plaintiff's ability to work has been impacted by vision problems. In fact, the record contains no substantive discussion of vision problems. For an ALJ to conclude that vision limitations in an RFC are warranted for a claimant, the claimant must provide some record of vision problems upon which to base that conclusion. Plaintiff provided no such information. Therefore, the ALJ's finding that Plaintiff lived with a severe impairment as to her glaucomatous optic atrophy does not conflict with the ALJ's finding that she could perform work that required

14

frequent near acuity. Accordingly, the Court rejects Plaintiff's argument that the ALJ erred by finding that she could perform work as a Marking Clerk, Routing Clerk, or Sorter with her assigned RFC.

## V.     Conclusion

Accordingly, based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. The relief requested in Plaintiff's Brief (Dkt. 5) is **DENIED**;

2. The relief requested in Defendant's Brief (Dkt. 9) is **GRANTED**; and

3. The Commissioner's final decision is **AFFIRMED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date: August 29, 2025                          *s/Shannon G. Elkins*
                                               SHANNON G. ELKINS
                                               United States Magistrate Judge